S12A0012. CHAPMAN v. THE STATE.
(724 SE2d 391)

HINES, Justice.

Justin Wayne Chapman appeals his conviction and sentence for felony murder while in the commission of arson in connection with

the death of Alice Jackson. His sole challenge is that his trial counsel rendered ineffective assistance. Finding the challenge to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. Sometime during the early morning hours of June 20, 2006, a fire erupted at a duplex in Haralson County that resulted in the death from smoke inhalation of one of the residents, Alice Jackson. Jackson lived in half of the duplex while the other half was occupied by Chapman, his then-girlfriend, and their children. The relationship between Chapman and Jackson was "probably more bad than good." Shortly before the fire, the owner of the duplex informed Chapman that she was not happy with the living arrangement, that there were too many people living in Chapman's side of the duplex, that it was "getting torn up," and that they would have to move. Chapman's girlfriend told the owner that they had been looking for a place to live but could not find anything they could afford. Chapman routinely paid his rent on the Monday of each week, but no rent payment was postmarked on the Monday before the Tuesday fire. Also, just prior to the fire, Chapman's son was observed to be crying, and when asked by a neighbor why he was upset, the son responded that "his dad was going to burn the house down."

After an altercation with another man the night before the fire, Chapman and his family went to stay at a friend's residence. Chapman and his girlfriend began to argue, and in the middle of the night Chapman left, saying that he was going to go home. In the early morning hours of June 20, a neighbor who was outside smoking spied Chapman in the area of the duplex; Chapman was readily recognizable because of his distinct gait. Shortly thereafter, at approximately 3:00 a.m., a neighbor smelled smoke and saw reflections of flickering images coming from the direction of the duplex. Minutes later, the duplex was fully engulfed in flames. Responding firefighters discovered Jackson's body.

Fire investigators concluded that the fire was intentionally set. Following Chapman's arrest for the crimes, he told fellow inmates that he had been angry with the landlord, and had gotten even with

---

[1] The crimes occurred on June 20, 2006. On August 22, 2006, a Haralson County grand jury returned an indictment against Chapman, charging him with malice murder, felony murder while in the commission of arson, and arson in the first degree. An order of nolle prosequi was entered on the malice murder charge. Chapman was tried before a jury June 25-29, 2007, and found guilty of felony murder and arson in the first degree. On June 29, 2007, he was sentenced to life in prison for felony murder, and the arson merged for the purpose of sentencing. A motion for new trial was filed on July 24, 2007, and an amended motion for new trial was filed on September 2, 2010. The motion for new trial, as amended, was denied on June 29, 2011. A notice of appeal was filed on July 19, 2011, and the case was docketed to the January 2012 term of this Court. The appeal was argued orally on January 9, 2012.

the landlord by setting the fire. He expressed regret over Jackson's death, but alternately stated the he "had done [Jackson] a favor."

1. The evidence was sufficient to authorize a rational trier of fact to find Chapman guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Chapman contends that his trial counsel was ineffective in multiple respects; he maintains that counsel failed to perform as a competent attorney in preparing for trial, in fully advocating on his behalf, and in failing to take certain actions and ignoring certain exculpatory evidence pertaining to his defense which compromised his right to counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). However, in order to prevail on a claim of ineffective assistance of counsel pursuant to *Strickland v. Washington*, a criminal defendant must demonstrate that his counsel's performance was deficient, and additionally, that, but for the deficient performance, there is a reasonable probability that the outcome of the trial would have been different. Upon its review, this Court will accept the trial court's factual findings and determinations of credibility unless they are clearly erroneous, but we will independently apply the legal principles to the facts. *Handley v. State*, 289 Ga. 786, 787 (2) (716 SE2d 176) (2011).

Chapman mentions in summary fashion numerous instances of what he maintains support his contention that his trial counsel was ineffective; however, such claims not pursued by specific legal argument are deemed to have been abandoned. *Perkins v. Hall*, 288 Ga. 810, 812 (II) (708 SE2d 335) (2011). This includes the attempt to incorporate other claimed failures by counsel argued to the trial court in Chapman's motion for new trial, as amended. Id. Chapman focuses on what he characterizes as the "most glaring issues" with regard to his ineffective assistance claim, and argues that counsel breached both a "duty of competence" and a "duty of advocacy" in several specific ways.

(a) Chapman contends that trial counsel breached a duty of competence by not adequately preparing for the case in that counsel "did nothing to question the idea that an accelerant was used to set the fire," which he characterizes as the "center" of the case. But, the contention is unavailing.

At the hearing on the motion for new trial, as amended, Chapman never asked trial counsel what she did or did not do regarding the presence of an accelerant; in fact, he did not question counsel at all with specificity about the issue even though the burden was his to show that his counsel's performance was deficient in that regard. *Johnson v. State*, 290 Ga. 382 (721 SE2d 851) (2012). Chapman merely obtained trial counsel's general agreement with

what Chapman was arguing at the hearing. Appellate counsel stated that any reports from fire investigators regarding the presence of an accelerant were not "focused on," and that any such reports "tend to have vanished," although there was no assertion at the hearing that the reports were unavailable or missing due to any action or inaction by Chapman's trial counsel. Moreover, as found by the trial court, it is a mischaracterization that trial counsel did nothing to explore the issue of the presence of any accelerant; counsel examined the expert witnesses about the cause, course, and nature of the fire, including the possible use of an accelerant. What is more, even if counsel is found to be deficient in regard to developing evidence of the lack of presence of an accelerant, the prejudice prong of *Strickland* cannot be satisfied. The evidence was that no positive samples of an accelerant were found at the fire scene, but that such fact was not dispositive on the question of the deliberate nature of the fire because it was not unusual for any used accelerant to be entirely consumed by the resulting fire.

(b) Chapman next asserts that trial counsel's incompetence is shown by the fact that defense investigator, Mull, was engaged to work on the case just 16 days prior to trial, which he maintains was an inadequate amount of time for such investigation. However, he does not now specify how the investigation fell short due to time constraint or how additional time would have made any difference in his case; rather, he merely states the bare conclusion that the amount of time was insufficient for "the investigator to collect salient facts and relay them to [d]efense [c]ounsel for use at trial." This is insufficient to satisfy either prong of the *Strickland* standard. *Judkins v. State*, 282 Ga. 580, 584 (5) (652 SE2d 537) (2007).[2]

(c) State's witness White, who had been housed in the same cell block as Chapman, testified at trial, inter alia, that Chapman told him that he "set the fire that killed the lady"; that he did so to get even with the landlord because they had been arguing; that he had an alibi because he "had found four people that were going to cover for him"; and that he was going to blame the fire on an individual named "Chieves," who was later housed in the same jail. Also read into evidence as prior consistent statements by White were portions of a letter that White had written and mailed to his pastor which

---

[2] In regard to Chapman's motion for new trial, as amended, he made the concomitant claim that trial counsel was remiss for failing to move for a continuance, ostensibly needed to gain more time to investigate and prepare for trial. At the hearing in the matter, trial counsel explained that this would have been a request for a second continuance in the case, and that she did not ask for it because after granting the defense an initial continuance, the trial court told counsel that there would not be any further continuances. The failure to pursue a futile motion does not constitute ineffective assistance. *Joiner v. State*, 265 Ga. App. 395, 397 (3) (c) (593 SE2d 936) (2004).

related the inculpatory statements made by Chapman to White.

Chapman asserts that trial counsel's incompetence is demonstrated by counsel's failure to "properly" object to evidence of the letter as containing prior consistent statements as it was inadmissible because "it was written at a time when [White] had a motive to lie." But, the trial transcript belies such assertion. It reveals that trial counsel vigorously objected to admission of such evidence on multiple bases, and that counsel attempted at great length to demonstrate any bias or motive on the part of White to fabricate his revelations about Chapman's culpability for the fatal fire.

(d) Chapman contends that his trial counsel breached a duty of advocacy by not having Chapman take a pre-trial polygraph in light of the fact that polygraph tests were administered to him post-trial with results which he states showed him "to be not deceptive in responding to questions regarding the fire and his responsibility for the incident." He urges that even though polygraph results are not admissible at trial without a stipulation by the State, a clear polygraph test can and often does lead the prosecution to either re-think its position on a case or re-open an investigation, and that had his trial counsel pursued a polygraph examination, it is probable that all charges against him would have been dropped.

At the motion-for-new-trial hearing, trial counsel explained that she did not pursue a pre-trial polygraph examination for Chapman because she was told that she would not be able to obtain funding for it, and Chapman was unable to pay for it himself. The fact that post-trial, the trial attorney may think that it would have been a good course to pursue funding for a pre-trial polygraph examination of Chapman does not establish the attorney's ineffectiveness because counsel cannot be adjudged ineffective based upon hindsight. *Harris v. State*, 280 Ga. 372, 375 (3) (627 SE2d 562) (2006). Furthermore, Chapman has not established that, even with a favorable pre-trial polygraph result obtained by the defense, his prosecution would not have continued. In fact, at the hearing on the motion for new trial, as amended, the State commented that, if a new trial was granted to Chapman, his prosecution would not be at an end based upon the already administered post-trial polygraph exams; at a minimum a new polygraph exam for Chapman would be administered prior to any decision about how to proceed with the case.[3]

(e) Finally, Chapman argues that the cumulative effect of the alleged errors so undermined the proper functioning of the adver-

---

[3] It should also be noted that there is no showing that, pre-trial, the State would have been willing to enter into a stipulation to authorize the admission into evidence of polygraph results. See *McKinney v. State*, 281 Ga. 92, 95 (2) (635 SE2d 153) (2006).

sarial process that a just result was not possible. However, inasmuch as Chapman has failed to demonstrate the ineffective assistance of trial counsel in any of the manners claimed, his assertion that trial counsel's cumulative errors deprived him of a fair trial has no merit. *Smith v. State,* 288 Ga. 348, 354 (8) (j) (703 SE2d 629) (2010).[4]

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 27, 2012.

*S. Fenn Little, Jr.,* for appellant.

*Robert E. Brooks, Jr., District Attorney, Craig E. Miller, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.

---

[4] As noted by the trial court, at the hearing on the motion for new trial, the State opined that a new trial should be granted; however, such statement is not dispositive on the question of the propriety of the grant of a new trial, especially in this instance in which neither the district attorney nor the assistant district attorney representing the State at the hearing directly participated in the trial of the case or, indeed, read or reviewed the trial transcript. After reviewing the entire trial transcript, the prosecutors, on appeal, support the trial court's denial of a new trial.