## S12A1159. FANIEL v. THE STATE.
### (731 SE2d 750)

HINES, Justice.

Antonio Faniel appeals his convictions for felony murder while in the commission of aggravated assault and possession of a firearm during the commission of a crime in connection with the fatal shooting of Doreen Young. He challenges the sufficiency of the evidence of his guilt, the admission into evidence of other transactions, and the effectiveness of his trial counsel. Finding the challenges to be without merit, we affirm.[1]

Viewed in the light most favorable to the verdicts, the record reflects the following. On May 3, 2000, an investigator with the Spalding County Sheriff's Office responded to a call that a hitchhiker had discovered a body hidden in the grass off the shoulder of Interstate 75. The body was determined to be that of Doreen Young, who had been fatally shot in the face at point blank range. A 9mm Luger CBC shell casing was recovered from the area surrounding the body. A pool of blood behind Young's head indicated that she was shot at the crime scene. Damage to her clothing was consistent with a struggle prior to her death. Young's time of death was estimated at 24-36 hours before the discovery of her body on May 3.

Young had been in a tumultuous romantic relationship with Antonio Faniel; they frequently fought, and Young often returned home with bruises inflicted by Faniel. On April 28, 2000, Young came to Faniel's residence in order to damage his car; the two had been

---

[1] On June 6, 2006, a Spalding County grand jury returned an indictment against Faniel, alleging that Young's murder and related crimes occurred between April 26, 2000 and May 3, 2000; the indictment charged Faniel with Count 1 – malice murder; Count 2 – felony murder while in the commission of aggravated assault; Count 3 – aggravated assault; and Count 4 – possession of a firearm during the commission of the crime of aggravated assault. He was tried before a jury April 14-20, 2008, and was found guilty on Counts 2, 3, and 4. By order signed April 21, 2008, and filed April 23, 2008, Faniel was sentenced to life in prison on Count 2, and a consecutive term of five years in prison on Count 4; Count 3 merged with Count 2 for the purpose of sentencing, and an order of nolle prosequi was entered on Count 1. A motion for new trial was filed on May 5, 2008, and it was denied by order signed on September 16, 2011, and filed on September 19, 2011. A notice of appeal was filed on October 17, 2011, and the case was docketed in this Court in the April 2012 term. The appeal was submitted for decision on the briefs.

fighting about another woman that Young believed Faniel was seeing. Faniel was seen exiting his residence with a towel draped over his arm and he went to where his car was parked; a neighbor believed that Faniel had a handgun under his towel. Shortly thereafter, the neighbor heard three gunshots. Later that afternoon, Young was seen by a friend to whom she confided that she and Faniel had recently been in a fight, and that she had scratched up his car.

During the investigation following the discovery of Young's body, Faniel denied knowing Young, claimed he worked somewhere he did not, and gave a false name. An investigator confirmed that Faniel worked for a tire repair company that routinely and frequently sent him to a truck stop near where Young's body was found. Faniel later admitted that he knew Young and that he had problems with her vandalizing his vehicle, but he denied that he owned a firearm. During a search of the boarding-house room in which Faniel resided, law enforcement recovered a box of 9mm Luger CBC bullets in his night stand; they also found 9mm Luger CBC shell casings outside the boarding house. It was determined that the shell casings had all been fired from the same Glock or Smith & Wesson handgun, and that the shell casings were from the same Brazilian manufacturer as the box of bullets in Faniel's night stand. Faniel was known to commonly carry a Glock handgun.

Early in the investigation, Matt Lautenschlager, a convicted felon and white supremacist who was serving a lengthy sentence in an Arizona penitentiary, confessed to the crime in a letter to law enforcement. Lautenschlager could provide no accurate details of the crime, even testifying that he shot Young in the torso. He also attempted to get money from Faniel for his testimony, and requested that Faniel provide him with details of the shooting so that his testimony would be credible.

Subsequent to the shooting of Young, in 2002, Faniel and Thoms, who was the mother of some of Faniel's children, got into a violent argument; Thoms was leaving Faniel and was searching in boxes inside their residence for some pictures when Faniel fired his handgun at her, leaving a bullet hole in the wall. Law enforcement arrived on the scene, and Faniel gave unconvincing accounts of what happened, even telling the officers that the handgun had discharged accidentally when it was dropped. The found physical evidence did not support Faniel's stories.

In 2004, Thoms was again involved in a violent episode with Faniel. Thoms and her new boyfriend were in their bedroom when Faniel burst into the home, enraged that the boyfriend was around his children; Faniel began to stab the man in his head. Following this incident, Faniel contacted Thoms's boyfriend and told him not to

press charges, threateningly stating, "you know what I did before. You know I, I ain't scared, you know, I'm gonna get you, you know." He also stated that he had gotten away with murder before, and he could do so again. Thoms told her boyfriend that she was afraid of Faniel because he had killed her male friend in front of her.

1. Faniel contends that the evidence is insufficient to sustain the verdicts because at best it is circumstantial and did not prove that he murdered the victim. However, circumstantial evidence will warrant a conviction if the evidence is sufficient to exclude all reasonable hypotheses save for the guilt of the accused. OCGA § 24-4-6;[2] *Boring v. State*, 289 Ga. 429, 432 (1) (711 SE2d 634) (2011).

Faniel attempted to show that Lautenschlager or someone else might have committed the crimes based on what the defense perceived as weaknesses in the State's case, and offered evidence of other individuals sighted in the area where Young's body was found and in the apparent time frame of the murder. But, whether the evidence excluded every other reasonable hypothesis except the guilt of the accused was for the jury to resolve. *Lindsey v. State*, 271 Ga. 657, 658 (522 SE2d 459) (1999). This Court does not re-weigh the evidence or resolve conflicts in trial testimony, which is properly assessed by the jury. *Caldwell v. State*, 263 Ga. 560, 562 (1) (436 SE2d 488) (1993). In determining whether the evidence was sufficient to satisfy OCGA § 24-4-6, this Court again must view the evidence in the light most favorable to the verdicts. *Brown v. State*, 288 Ga. 902, 904 (2) (708 SE2d 294) (2011). In so doing, the evidence at trial was sufficient to enable any rational trier of fact to find Faniel guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Faniel maintains that the trial court erred in admitting three unrelated criminal incidents involving his former girlfriend Thoms as similar transactions to show his motive and intent, resulting in the admission of prejudicial character evidence. Faniel complains of evidence of the 2002 violent argument between Faniel and Thoms, and the 2004 violent episode involving Thoms and her then boyfriend, both of which resulted in criminal charges against Faniel, and convictions. He also asserts error in admitting evidence of a 2001 incident in DeKalb County in which he fatally shot another man who was riding in a vehicle with Thoms, and for which Faniel was charged, tried, and acquitted of the resulting charges.

---

[2] OCGA § 24-4-6 provides:
To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.

In order to have a similar transaction admitted into evidence, the State has the burden to demonstrate that: (1) it seeks to introduce the evidence for an appropriate purpose to except the evidence from the general rule of inadmissibility; (2) there is evidence to sufficiently establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent transaction and the crimes on trial so that proof of the former tends to prove the latter. *Moore v. State*, 290 Ga. 805, 807 (2) (725 SE2d 290) (2012), citing *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991). And, once the affirmative showings mandated by *Williams* have been made, evidence of similar transactions is admissible even though it may incidentally place the defendant's character in evidence. *Smith v. State*, 296 Ga. App. 608, 611 (1) (675 SE2d 310) (2009).

Citing *Collum v. State*, 281 Ga. 719 (642 SE2d 640) (2007), Faniel argues that the trial court admitted these three transactions for the purpose of showing his bent of mind, and that the commonality among the three incidents is that he acted in an emotional state, in contrast to the present case in which "there are no facts to support that [he] was in an emotionally charged state."

In order to authorize the admission into evidence of a transaction, the transaction does not have to mirror every detail of the incident on trial; rather, the proper analysis focuses upon the similarities between the incidents and not upon the differences. *Collum*, 281 Ga. at 723 (4). What is more, when such evidence is admitted for the purpose of showing bent of mind, a lesser degree of similarity is required than if such evidence was admitted in order to prove identity of the defendant as the perpetrator. Id.

There was unquestionably similarity between the 2002 and 2004 incidents and the present case. They all involved Faniel reacting violently with a weapon and inflicting physical injury when he believed his authority was challenged by a female with whom he once had a romantic relationship. As for the admission of the 2001 incident for which he was eventually found not guilty, there is not a per se rule prohibiting any evidentiary use of an independent offense where an acquittal was obtained; instead, the doctrine of collateral estoppel requires an examination of what facts were in issue and necessarily resolved in the defendant's favor at the first trial. *Salcedo v. State*, 258 Ga. 870 (376 SE2d 360) (1989). And, even if evidence of a similar transaction is admitted in error, reversal is not required if it can be shown beyond a reasonable doubt that the evidence did not contribute to the convictions. *Moore v. State*, 254 Ga. 674, 677-678 (333 SE2d 605) (1985). The strong circumstantial and direct evidence presented

at trial, including the two other properly admitted similar transactions warrant the conclusion that Faniel's convictions were not affected by evidence of the 2001 incident. Moreover, the 2001 killing and Faniel's eventual acquittal were effectively in evidence when in the 2004 incident involving Thoms's new boyfriend, Faniel menacingly told the boyfriend that he had previously gotten away with murder, and he could do so again.

3. Lastly, Faniel maintains that his trial counsel was ineffective in numerous respects. Faniel was represented at trial by two attorneys, but focuses his claims on lead counsel, who was initially retained on the case prior to the determination that Faniel was indigent. Lead counsel had previously been retained by Faniel's family to represent Faniel in the DeKalb County murder and related charges, and lead counsel represented him at trial on those charges, which resulted in Faniel's acquittal.

In order to prevail on his claim of ineffective assistance, Faniel must show that his counsel's performance was deficient and that the demonstrated deficiency prejudiced him so that there is a reasonable likelihood that, but for the deficiency, the outcome of his trial would have been different; to do so, Faniel must overcome the strong presumption that counsel's conduct was within the broad range of reasonable professional conduct. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In this Court's examination of the ineffectiveness claim, it is to give deference to the trial court's factual findings, which are to be upheld unless clearly erroneous; however, it reviews the lower court's legal conclusions de novo. *Sanford v. State*, 287 Ga. 351, 356 (5) (695 SE2d 579) (2010).

(a) Faniel claims first that his trial counsel chose an obviously failing strategy by asserting that Lautenschlager was the actual murderer because Lautenschlager was not credible. And, that although counsel doubted this strategy, he continued with it and wasted time and resources while not exploring other more favorable defenses. But, the argument is unavailing.

At the motion-for-new-trial hearing, lead trial counsel testified that he traveled to Arizona to interview Lautenschlager, and questioned him extensively, including about whether he was able in prison to get news of Young's murder; also, Lautenschlager seemed to know a lot about the area where Young's body was found. Trial counsel believed that he would not be properly representing Faniel if he failed to call Lautenschlager as a witness in that Lautenschlager would testify that he killed Young and that Faniel had no involvement. Furthermore, second chair counsel agreed that prior to trial, Lautenschlager appeared to be credible. So it cannot be deemed unreasonable to have offered Lautenschlager as the admitted killer and left the

question of his credibility, as that of any witness, as well as the resolution of any conflicts or inconsistencies in his testimony for the jury. *Westbrook v. State*, 291 Ga. 60 (727 SE2d 473) (2012); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009). The fact that post-trial, trial counsel or appellate counsel might think that it would have been a better course to abandon focusing on Lautenschlager as the killer, or indeed using him to raise reasonable doubt, does not establish the attorney's ineffectiveness because counsel cannot be adjudged ineffective based upon hindsight. *Chapman v. State*, 290 Ga. 631, 635 (2) (d) (724 SE2d 391) (2012).

(b) Faniel next maintains that trial counsel did not adequately investigate the case by failing to secure his work records in 2000, prior to Faniel's indictment and to locate potential witnesses in order to establish an alibi; he complains specifically that counsel did not interview Young's family to find out about other people in conflict with Young or to investigate a person of interest referred to as "Mike Mike." But, the evidence at the motion for new trial authorized the finding that counsel did considerable investigation in the case, including exploring the possibility of securing witnesses favorable to the defense for the purpose of establishing an alibi or otherwise. And, even though trial counsel did not initially attempt to secure work records prior to Faniel's indictment on the present charges, trial counsel subsequently did so, but it was determined that such records did not exist. What is more, at the time counsel was initially retained on this case, he spoke to people at Faniel's workplace in an attempt to establish an alibi for Faniel and recorded their names and addresses. Counsel also attempted to identify and locate the individual referred to as "Mike Mike," but could not find him; Faniel did not supply counsel with any useful information in that regard.

Lastly, during the motion-for-new-trial hearing, Faniel did not present any evidence in support of an alibi. In the absence of any affirmative showing supporting an alibi defense and that a negligent oversight by counsel prevented any alleged alibi from being presented to the jury, Faniel cannot show a reasonable probability that the results of his trial would have been different. *Jones v. State*, 315 Ga. App. 427 (727 SE2d 216) (2012).

(c) Faniel next urges ineffectiveness on the basis that counsel did not look into the character and history of Young; Faniel asserts that she was considered a "high-risk" victim by investigators, i.e., alleged drug use and prostitution. On motion for new trial, Faniel failed to elicit evidence to support such allegations, and even if there was evidence of the victim's drug use and/or engagement in prostitution, he made no showing of relevance to a determination of who killed the victim. See *Bryant v. State*, 249 Ga. 242, 243 (2) (290 SE2d 75) (1982).

(d) Faniel complains that counsel never attempted to acquire the police report from the alleged April 28, 2000 altercation between himself and Young, which he maintains could have corroborated or impeached witness testimony and the State's assertion of prior conflict between them. But, Faniel made no showing that the contents of any such report would have strengthened his defense in any way so as to better the outcome of his trial. *Strickland v. Washington*, supra.

(e) Faniel next asserts counsel's ineffectiveness for not obtaining a DNA examination of Young's clothing inasmuch as its condition indicated a possible struggle with the killer. But, here again, on motion for new trial, Faniel has failed to establish that there was any DNA evidence and/or articles of clothing retrieved from Young's body which it would have been useful to test.

(f) Faniel complains of trial counsel's treatment of the found shell casings, including that counsel did not attempt to establish that "there was no real proof" that those found at the scene actually were fired from the gun that killed Young. However, at the motion-for-new-trial hearing, counsel testified that he conferred with a well known ballistics expert, formerly with the state crime lab, and that the expert examined the ballistics evidence, including the State's expert's report, but that the conclusion was that such expert opinion would not be helpful to Faniel. And, Faniel failed to present any evidence that different or further treatment of the found shell casings would have been useful to his defense.

(g) Faniel urges that counsel was ineffective because he failed to object to multiple instances of "clear hearsay," including a police officer's testimony about his belief of Faniel's guilt and motive for the killing. However, Faniel's complaints in this regard are unavailing. He did not establish that such testimony constituted inadmissible hearsay. What is more, the specific instance of the police officer's expressed opinion regarding Faniel's guilt was in response to a question on cross-examination by the defense; therefore, it was not subject to the type of hearsay objection now urged.

(h) Faniel asserts that counsel's ineffectiveness is shown by the fact that counsel did not object to what Faniel characterizes as the prosecutor's "erroneous definition of circumstantial evidence" during closing argument in that the prosecutor stated, inter alia, "You can't have circumstantial evidence unless you've got direct evidence." Faniel argues that the statement was "adverse" to the instruction given by the trial court, and therefore, would "confuse a reasonable juror." But, Faniel does not challenge the correctness of the trial court's instruction on circumstantial evidence, and the trial court

plainly charged the jury that it was the court's duty and responsibility to determine the law applicable to the case and to instruct the jury on that law, and that the jury must apply the law as given by the court. No prejudice to Faniel can be shown. *Strickland v. Washington*, supra.

(i) Faniel also asserts that counsel provided ineffective assistance in that counsel had "questionable motivation in determining defense strategy or tactics," i.e., in offering Lautenschlager as Young's slayer, in order to secure funds from Faniel's family for travel relating to Lautenschlager which had already been publicly funded on the basis of Faniel's determination of indigency. Even assuming arguendo, that there was an alternate or potentially more effective defense than pursuing Lautenschlager, Faniel did not demonstrate that counsel chose such a defense in order to obtain more money or for any improper reason, much less the existence of any conflict of interest.

(j) To the extent that Faniel has raised in argument the specter of other alleged deficiencies of trial counsel, they fail for want of proof. And, insofar as Faniel's arguments imply that cumulative errors deprived him of a fair trial, such a conclusion is unwarranted inasmuch as Faniel has failed to demonstrate the ineffective assistance of trial counsel in any of the manners claimed. *Chapman v. State*, 290 Ga. 631, 636 (2) (e) (724 SE2d 391) (2012).

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 10, 2012.

*Charita H. Demps*, for appellant.

*Scott L. Ballard, District Attorney, Robert W. Smith, Jr., Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.