S13A0100. HOFFLER v. THE STATE.
(739 SE2d 362)

HINES, Justice.

Robert Hoffler appeals the denial of his motion for new trial, as amended, following his convictions for malice murder and possession of a firearm during the commission of a felony in connection with the fatal shooting of Quincy Dunlap. He challenges the sufficiency of the evidence of his guilt; the method of impeachment of a defense witness; testimony about the contents of a witness's prior statement; the

absence of a jury instruction; and the effectiveness of his trial counsel. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. On July 8, 2006, Robert Hoffler shot and killed Quincy Dunlap on Joyce Street in Atlanta. Dunlap had been living in an apartment with his sometime girlfriend, Phillis Worthy. On July 6 or 7, 2006, Dunlap moved out of the apartment at Worthy's request because he had not paid the rent but instead spent the money on drugs. Worthy contacted Hoffler who helped her pay the rent and then moved into Worthy's apartment, bringing several bags of belongings with him. On July 7, 2006, Hoffler and Worthy drank beer outside the apartment and went to sleep in Worthy's room. Also, on July 7, 2006, Dunlap went to the home of his friend Orlando Robinson, and there spoke with Fred Vandiver about his break-up with Worthy; Dunlap and Vandiver spent the day getting high on crack cocaine. Dunlap left about 2:00 a.m. on July 8; he still had keys to Worthy's apartment, entered and took her purse with her "I.D." and Hoffler's duffle bag. Later that day, Worthy and Hoffler noticed that the items were missing.

Earlier on the day of the fatal shooting, Dunlap and Hoffler got into an argument, and Dunlap allegedly pulled out a knife. When Hoffler saw the knife, he backed away, and no physical fight occurred. After this incident, Hoffler had a friend bring him a handgun. On the evening of July 8, Hoffler took the handgun with him to Joyce Street to look for Dunlap, who Hoffler knew often stayed there. Hoffler found Dunlap, and stated, "Where's my bag? I'll shoot you. I will shoot your ass." Dunlap responded, "[I]f you're going to shoot me, shoot me." Hoffler then shot Dunlap.

Hoffler returned to Worthy's apartment, and after Worthy found out about the killing, she asked Hoffler about it and he denied his involvement. Hoffler left and fled to Florida. Hoffler was profiled on

---

[1] The crimes occurred on July 8, 2006. On July 25, 2008, a Fulton County grand jury returned an indictment against Hoffler, charging him with malice murder, felony murder while in the commission of aggravated assault, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. Hoffler was tried before a jury September 22-24, 2009, and was found guilty of all charges. On September 25, 2009, he was sentenced to life in prison for malice murder and five years in prison "suspended to run consecutive" to the life sentence. The felony murder verdict stood vacated by operation of law and the aggravated assault with a deadly weapon was found to be merged with the malice murder for the purpose of sentencing. Trial counsel filed a motion for new trial on Hoffler's behalf on October 21, 2009, and Hoffler, pro se, filed an amended motion for new trial on July 14, 2010. The motion for new trial, as amended, was denied October 31, 2011. A notice of appeal was filed November 30, 2011, and the case was docketed in this Court in the January 2013 term. The appeal was submitted for decision on the briefs.

the television show "America's Most Wanted," and he then turned himself in to authorities.

At trial, Hoffler testified that he shot Dunlap in self-defense because Dunlap pulled a knife on him; he claimed he saw the blade. A closed silver pocket knife was found inside the victim's pants pocket, and another closed knife was found in a wooded area about eight to ten feet from the victim's body. Dunlap died from a gunshot wound to the chest. It was determined that the fatal bullet was fired from an "indeterminate or distant range."

1. Hoffler contends that there was insufficient evidence to support the verdicts because the State was unable to present any evidence to disprove the earlier incident between himself and Dunlap or to present sufficient evidence to disprove that he acted in self-defense when he shot Dunlap.

In this Court's review of the sufficiency of the evidence to support a criminal conviction, this Court does not weigh or evaluate the evidence for itself, or resolve conflicts concerning the evidence; it is to examine the evidence, in a light most favorable to the verdict, and as a whole, to determine whether any rational trier of fact could have found the accused guilty beyond a reasonable doubt. *Barela v. State*, 271 Ga. 169, 171 (517 SE2d 321) (1999). Issues of witness credibility and the existence of justification are for the jury to determine, and it is free to reject a defendant's claim that he acted in self-defense. *White v. State*, 287 Ga. 713, 715 (1) (a) (699 SE2d 291) (2010). Here, there was testimony from eyewitnesses to the shooting and forensic evidence which belied the claim that Hoffler acted in self-defense; the jury was authorized to conclude that Hoffler did not act in self-defense. Id. Indeed, the evidence was sufficient to enable a rational trier of fact to conclude that Hoffler was guilty beyond a reasonable doubt of the crimes for which he was charged and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hoffler next contends that the trial court committed reversible error by allowing the impeachment of defense witness Harris in violation of former OCGA § 24-9-84.1,[2] in that the State sought to impeach Harris with an alleged conviction which was over ten years old without giving written notice of its intent to do so, without

---

[2] Former OCGA § 24-9-84.1 provided in relevant part:

(a) *General rule.* For the purpose of attacking the credibility of a witness, or of the defendant, if the defendant testifies:

(1) Evidence that a witness has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the witness was convicted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the witness;

presenting a certified copy of the conviction at the time of Harris's testimony, and without ruling that the probative value of the conviction substantially outweighed its prejudicial effect.

The record reveals that the instance in question occurred when the defense called Harris apparently to testify about the altercation between Hoffler and Dunlap earlier on the day of the murder. On cross-examination, the State asked Harris, "Now, is it true, you have familiarity with the police from a possession of cocaine with intent conviction?," and he responded, "Yeah."

Even assuming the failure to comply with former OCGA § 24-9-84.1, any error resulting therefrom must be found to be harmless as the evidence of Hoffler's guilt was overwhelming. *Brinson v. State*, 289 Ga. 150, 154 (4) (709 SE2d 789) (2011). As noted, there were eyewitnesses to the murder, and the forensic evidence did not support Hoffler's claim of self-defense. Also, contrary to Hoffler's claim, witness Harris was not crucial to the defense as he was not an eyewitness to the shooting, and thus, could not bolster Hoffler's self-defense claim. *Cannon v. State*, 288 Ga. 225, 227 (3) (702 SE2d 845) (2010). Finally, there was other evidence before the jury of Harris's criminal record in that later in his testimony Harris made an unsolicited reference to his "rap sheet." See *State v. Rigdon*, 284 Ga. App. 785, 787 (645 SE2d 17) (2007).

3. Citing former OCGA § 24-9-69[3] and *Mincey v. State*, 257 Ga. 500 (360 SE2d 578) (1987), Hoffler maintains that the trial court

---

   (2) Evidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant; and

   (3) Evidence that any witness or the defendant has been convicted of a crime shall be admitted if it involved dishonesty or making a false statement, regardless of the punishment that could be imposed for such offense.

  (b) *Time limit.* Evidence of a conviction under subsection (a) of this Code section is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness or the defendant from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old, as calculated in this subsection, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

[3] Former OCGA § 24-9-69 provided:

  A witness may refresh and assist his memory by the use of any written

committed reversible error in allowing a detective to testify to the contents of a prior statement made by State's witness Smith to police because the detective had no personal knowledge of the statement. But, the complaint is unavailing.

During Smith's testimony on direct, the State asked Smith about what Hoffler was wearing when she saw him earlier on the day of the shooting, and she responded that she "forgot." In order to refresh her recollection, the State showed her a copy of a written statement she had given to police a few days after the shooting in which she had described in some detail the clothing worn by Hoffler. The State successfully argued for admission into evidence of the statement as a prior inconsistent statement. See *Taylor v. State*, 290 Ga. 245 (1) (719 SE2d 417) (2011). Later at trial, the detective in question, who did not interview Smith, testified briefly that in Smith's statement she described the shirt that Hoffler was wearing on the day of the shooting as "a Polo like white shirt with skinny red lines going across the shirt."

As noted, Smith's statement to police was already in evidence. Yet, Hoffler urges that permitting the detective to testify about the statement allowed the State to improperly bolster the credibility of its witnesses, and the credibility of such witnesses was critical as to whether the jury believed Hoffler was acting in self-defense. Insofar as bolstering the credibility of Smith for the purpose of Hoffler's self-defense claim, Smith did not even witness the shooting. And, assuming arguendo that it was error to allow the detective to testify about the statement, such error would have to be found to be harmless because identity of the perpetrator was not at issue as Hoffler admitted shooting the victim, but alleged that he was justified in doing so. What is more, the evidence at issue in Smith's statement was cumulative of other testimony adduced at trial.

4. Hoffler contends that the trial court committed reversible error by failing to instruct the jury on the principle of "no duty to retreat," as in *Hill v. State*, 310 Ga. App. 695 (713 SE2d 891) (2011), which involved the pattern jury instruction at the time of trial.[4] He

---

instrument or memorandum, provided he shall finally speak from his recollection thus refreshed or shall be willing to swear positively from the paper.

[4] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 3.10.13 (4th ed. 2007) reads:

One who is not the aggressor is not required to retreat before being justified in using such force as is necessary for personal defense or in using force that is likely to cause death or great bodily harm if one reasonably believes such force is necessary to prevent death or great bodily injury to oneself or a third person or to prevent the commission of a forcible felony.

acknowledges that his trial counsel did not request such an instruction; however, he maintains that inasmuch as self-defense was his sole defense and the State raised the issue of retreat, even in the absence of a request, the trial court had a duty to so instruct the jury.

Inasmuch as the omission of the jury instruction at issue was enumerated and argued on motion for new trial and on appeal, this Court will undertake a plain error analysis. *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011). In order to reverse a conviction on this ground, all four prongs of the standard adopted in *Kelly* must be met: the instruction, or in this case the failure to give it, was erroneous; the error was obvious; the failure to give the instruction likely affected the outcome of the proceedings; and the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Terry v. State*, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012). In the case of a review for "plain error," it is not sufficient to find actual legal error, "as the jury instruction in question must have an obvious defect rather than a merely arguable defect." Id. But, in this case, there is no legal error, obvious or otherwise.

Hoffler cannot make it past the first prong of the plain error review. The legal theory of "no duty to retreat," is "that if one who is claiming self-defense was not the original aggressor he has no duty to retreat." *Alvelo v. State*, 290 Ga. 609 (5) (724 SE2d 377) (2012). Hoffler's testimony at trial belies the claim that he was not the *original* aggressor. Hoffler testified that he got a handgun, that it was loaded, and that he purposefully sought out Dunlap to confront him. By his own account, Hoffler walked up to Dunlap, and started the verbal confrontation; Dunlap did not say anything; Dunlap "started reaching his hands . . . on the right side"; Hoffler then "just seen a knife come out"; and then "the first thing that came to [Hoffler's] mind was to pull the gun out"; the men were at least three or four feet apart; Dunlap did not say anything but "just looked" at Hoffler; Hoffler "stepped back"; Hoffler shot Dunlap and "took off running and left." Even though Hoffler claimed he saw a knife with blade exposed, he was wielding a loaded handgun and he did not testify that Dunlap threatened him verbally or lunged at him or in any way attempted a physical attack upon him. Indeed, the eyewitness accounts and the forensic evidence do not support a claim that Dunlap was the original aggressor. What is more, Hoffler testified that he did attempt to retreat in some fashion as he "stepped back" from Dunlap. Without evidence to warrant the instruction at issue, it cannot be said that the failure to give it was error. *Terry v. State*, supra at 509 (2). However, even assuming arguendo that there was evidence that Hoffler was not the original aggressor and that retreat was indeed in issue, the failure to charge on the lack of duty to retreat does not mandate

reversal because Hoffler's defense of self-defense was fairly presented to the jury, and the jury was fully instructed on the law of justification and self-defense. *Edmonds v. State*, 275 Ga. 450, 453 (4) (569 SE2d 530) (2002).

5. Hoffler's final claim is that he was denied his right to effective assistance of counsel under the State and Federal Constitutions. In order to prevail on his claim of ineffective assistance of trial counsel, Hoffler has to demonstrate that his counsel's performance was deficient and that the demonstrated deficiency prejudiced him to the extent that there is a reasonable likelihood that, but for the deficiency, the outcome of his trial would have been different; in order to do so, he has to overcome the strong presumption that his attorney's conduct was within the broad range of reasonable professional conduct. *Faniel v. State*, 291 Ga. 559, 563 (3) (731 SE2d 750) (2012), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). This Court is to defer to the trial court's factual findings, which are to be upheld unless clearly erroneous; however, it is to review the lower court's legal conclusions de novo. *Faniel v. State*, supra at 563 (3).

In support of his ineffectiveness claim, Hoffler cites trial counsel's failure to request a jury instruction on "no duty to retreat," trial counsel's failure to "properly investigate" the alleged criminal history of Harris after the State informed counsel of its intent to impeach Harris without a certified conviction, and trial counsel's failure to object to the lead detective's alleged improper bolstering of Smith's testimony and that of two other State's witnesses in regard to what Hoffler was wearing on the day of the murder.

But, as already discussed in regard to the prior enumerations of error, Hoffler has failed to show either professional deficiencies by counsel or prejudice in regard to Hoffler's complaints about a jury instruction on "no duty to retreat," the alleged criminal history of Harris, and the detective's alleged bolstering of Smith's testimony. As for the asserted bolstering of the other two named State's witnesses, any error in allowing the testimony would be harmless inasmuch as identity of Hoffler as the shooter was not in dispute. See Division 3, supra. Yet, Hoffler urges that trial counsel's alleged errors, considered cumulatively, show that the representation was so deficient as to constitute ineffective assistance. However, because Hoffler has not demonstrated the ineffective assistance of trial counsel in any of the manners claimed, his assertion that trial counsel's cumulative errors mandate such a finding has no merit. *Chapman v. State*, 290 Ga. 631, 635-636 (2) (e) (724 SE2d 391) (2012).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 4, 2013.

*Alixe E. Steinmetz*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Lenny I. Krick, Paige Reese Whitaker*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Katherine L. Iannuzzi*, Assistant Attorney General, for appellee.