304 Ga. 621
FINAL COPY

S18A1171. RIVERA v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Selena Rivera was found guilty of malice murder and other offenses in connection with the beating death of three-year-old Nevaeh Pinckney.[1] On appeal, Rivera contends that the evidence at trial was insufficient to support the verdict. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the record shows that, at the time of the murder, Rivera lived with her three grandchildren: R. R. (age

---

[1] On September 24, 2013, Rivera was indicted for malice murder of Nevaeh Pinckney, felony murder of Nevaeh, and two counts of aggravated assault (one for striking Nevaeh on the head and one for striking her on the torso and extremities). Following a jury trial that ended on September 10, 2015, Rivera was found guilty of all counts. On September 16, 2015, the trial court sentenced Rivera to life imprisonment for malice murder and merged the two aggravated assault counts. The conviction for felony murder was vacated by operation of law. Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). On September 30, 2015, Rivera timely filed a motion for a new trial. After a hearing on September 14, 2016, the trial court denied the motion on February 13, 2018. Thereafter, Rivera timely filed a notice of appeal on March 5, 2018, and her appeal was docketed to the August 2018 term of this Court and submitted for decision on the briefs.

8), C. P. (age 5) and Nevaeh (age 3).[2] On August 9, 2012, while Rivera and the children were living in the Savannah Suites Hotel, Rivera took Nevaeh to the hospital with a head injury, claiming Nevaeh fell in the bathtub. While at the hospital, a child abuse expert was called in to give Nevaeh an examination and a series of x-rays. The examination revealed that Nevaeh did have some injuries, including scrapes and a broken toe. Without contextual information and more sophisticated tests, the expert could not conclude at the time whether the injuries were accidental. The case was referred to the Department of Family and Children Services ("DFCS"), but the children were not taken from Rivera. Nevaeh was discharged after two days, and shortly thereafter, Rivera and the children moved out of the hotel and into an apartment building.

At around 10:30 p.m. on August 21, 2012, emergency medical personnel and law enforcement officers responded to Rivera's apartment and found that Nevaeh was not breathing and had no pulse. Nevaeh was transported to Egleston Children's Hospital where, after repeated attempts to revive her, she was pronounced dead in the emergency room. It is undisputed that Rivera had custody of the three children at this time, and she was their sole caretaker.

---

[2] All three children had been left with Rivera by their mother, Nakeria Pinckney.

Following Nevaeh's death, DFCS removed R. R. and C. P. from Rivera's custody, and a forensic interviewer spoke with each child separately. The statements both children initially gave did not implicate Rivera in Nevaeh's death, although there were inconsistencies and signs of coaching. Several weeks after Nevaeh's death, however, R. R. told her foster mother "remember when I said my sister just died? . . . [W]ell that's not true. . . . [M]y grandmother killed my sister." R. R. further told her foster mother that Rivera would beat Nevaeh and C. P. with a pole. R. R. also recounted that Rivera would threaten to smother Nevaeh and C. P. on occasion, even going so far as to place a pillow over their faces before eventually letting up. R. R. and C. P.'s foster mother reported this to DFCS, and law enforcement arrested Rivera on September 6, 2012.

After Rivera had been arrested, a second forensic interview was conducted with R. R. and C. P. In this interview, R. R. said that Rivera regularly beat the children with her hands and a pole. R. R. was able to describe the pole, and its description matched one recovered from Rivera's apartment.[3] R.R. also relayed that her siblings had been abused while living at the hotel,

---

[3] Law enforcement officers executed a search warrant of Rivera's residence and seized a black pole, a silver pole, and wooden slats.

detailing how, as punishment, Rivera made C. P. and Nevaeh stand naked, all night, in front of an air conditioner. R.R. spoke about how she had also seen Rivera slam Nevaeh's head into the ground, and she indicated that Nevaeh had to be taken to the hospital on August 9, 2012, because Rivera pushed Nevaeh in the shower, causing her to fall and hit her head. C.P. also stated that Rivera hit Nevaeh with a pole and with her hand.

With regard to the night of the murder, R.R. stated that Rivera and the children had all been downstairs when Nevaeh urinated on herself. Rivera then took the child upstairs, put her in the bathroom, and hit her in the back with a pole. After this, Rivera put Nevaeh in a closet for about five minutes. When Rivera picked up Nevaeh, who was already in distress, and lifted her out of the closet, R.R. said Nevaeh "look[ed] like she was going to die." It was then that Rivera called 911.

Upon a subsequent examination, the medical examiner determined that Nevaeh "died as a result of being beaten repeatedly over a period of time." On her face and neck, Nevaeh had numerous scratches caused by fingernails. Nevaeh's mouth had been hit or held shut so often that the soft tissue between the lips and gums was becoming scar tissue. Nevaeh had bruising inside her left arm, lower back, and buttocks. Bruising in Nevaeh's right arm was severe

enough to indicate major trauma, equivalent to a car wreck or significant fall. Nevaeh had two parallel, closely-spaced, blunt-force injuries on the back of her head that were weeks old. All of these injuries were at various stages of healing, indicating they had occurred over time. The force necessary to inflict these injuries had to have been at or near adult-level strength. The medical examiner concluded that Nevaeh ultimately died from multiple blunt force injuries to the head, torso, and extremities, as the internal bleeding from the various injuries, combined with dehydration, caused her to go into cardiac arrest.

This evidence was sufficient to enable the jury to find Rivera guilty of the crimes for which she was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Nonetheless, Rivera asserts that the statements made by R. R. and C. P., in each of their second forensic interviews, are the only direct evidence of guilt and that these forensic interviews were conducted in a manner designed to elicit false accusations against Rivera. As an initial matter, Rivera's assertion is factually inaccurate with regard to the direct evidence, as prior to the second forensic interviews, R. R. told her foster mother that Rivera had killed Nevaeh, and described incidents of abuse. In any event, Rivera's arguments challenge the

weight and credibility of the evidence. This Court "does not weigh or evaluate the evidence for itself, or resolve conflicts concerning the evidence. . . . Issues of witness credibility and the existence of justification are for the jury to determine." Hoffler v. State, 292 Ga. 537, 539 (739 SE2d 362) (2013). Rivera made these arguments to the jury below and presented expert witness testimony regarding the methods used to interview the children, but the jury, within its purview to consider the evidence, rejected Rivera's arguments. Id.

Judgment affirmed. All the Justices concur.

Decided October 22, 2018.

Murder. DeKalb Superior Court. Before Judge Scott.

Chaunda Brock, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Deborah D. Wellborn, Gerald Mason, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.