In the Supreme Court of Georgia

Decided: January 22, 2019

S18A1629. BARNES v. STATE.

BETHEL, Justice.

Following his conviction for the murder of Jack Thomas Beasley, Jr., Desmond Barnes appeals the denial of his motion for new trial.[1] Barnes argues that he received ineffective assistance when his trial counsel: made an inflammatory statement during cross-examination of one of the State's witnesses; failed to secure a jury charge on mutual combat; and failed to move to dismiss the jury panel when a potential juror made a prejudicial statement. Barnes further argues that the trial court erred in not granting his objection to the court's instruction on malice murder. For the following reasons, we disagree and affirm.

---

[1] Beasley died the day after Barnes's attack on March 9, 2011. On June 5, 2012, a Terrell County grand jury indicted Barnes for malice murder, felony murder, and aggravated assault. After an August 2012 trial, a jury found Barnes guilty on all three counts. Barnes was sentenced to life imprisonment for murder. Barnes filed a motion for new trial on October 15, 2012, and amended that motion on June 15, 2017. Following a hearing, the trial court denied the motion (as amended) on August 14, 2017. Barnes filed a notice of appeal to this Court on August 24, 2017, and this case was docketed to the August 2018 term and submitted for a decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. On March 9, 2011, Barnes argued with his girlfriend about text messages she received from another man. Barnes struck his girlfriend and stormed out of the home after his mother intervened. As Barnes was walking down the street, Barnes's mother heard him shouting profanity at Jack Thomas Beasley, Jr., a neighbor.

Later that day, Barnes was seen in the local grocery store, where he informed several people that he had "knocked out" Beasley. Barnes also requested a paper towel to wipe some blood from his hand. One of Beasley's family friends, who was also in the store, left to go check on Beasley.

When the family friend arrived at Beasley's home, he found Beasley in the yard badly beaten and attempting to crawl on his hands and knees back into his house. Beasley was taken by ambulance to the hospital where he died from his injuries the next day.

Barnes later told police that as he was walking by Beasley's house, Beasley grabbed him, slammed him into the ground, and then choked him. Barnes claimed that he eventually got to his feet but that Beasley would not let go of his legs. Barnes stated that he then kicked Beasley several times, eventually

knocking him out. However, Barnes told his girlfriend a contradictory story – that the incident occurred because Beasley was "in his business." Further, law enforcement officers who observed Barnes after the incident did not see any marks on Barnes's neck consistent with being choked. Barnes also made inconsistent claims to police regarding the location of the altercation and whether Beasley was responsible for Barnes's black eye.

Barnes does not challenge the legal sufficiency of the evidence supporting his conviction. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that the evidence presented at trial was sufficient to authorize a rational jury to find Barnes guilty beyond a reasonable doubt of the crime of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979); see also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.") (citation omitted).

2. Barnes argues that he received ineffective assistance when his trial counsel: (a) made an inflammatory statement during cross-examination of one of the State's witnesses; (b) failed to secure a jury charge on mutual combat; and (c)

3

failed to move to dismiss the jury panel when a potential juror made a prejudicial statement.

> In order to succeed on his claims of ineffective assistance, [Barnes] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LEd2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. *Id.* at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(Punctuation omitted.) *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Furthermore, "[t]rial tactics and strategy . . . are almost never adequate

4

grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation omitted.) *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014).

(a) Barnes contends that his trial counsel's choice of words while questioning a GBI witness had a "cumulative effect" of harming his right to a fair trial and that his trial counsel was therefore ineffective. We disagree.

When Barnes's trial counsel questioned the witness about the attack, the following exchange occurred:

Q: *Maybe I'm beating a dead horse to death*, but you still haven't told me how he got on the ground. I mean, did he just come up to him and cold cock him and knock him on the ground? How did he get on the ground?

A: I can't fully answer that question. I can't.

At the hearing on the motion for new trial, Barnes's trial counsel explained that his use of this turn of phrase (emphasized above) was not unusual and that he said it to make the point that he had probably already asked the question but "wanted

5

to know" the answer. Although Barnes's attorney may have mangled the wording, the phrase "beating a dead horse," or any variation thereof, is commonly used to indicate when a person intends "to keep talking about a subject that has already been discussed or decided." See Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/ beatadeadhorse. Accordingly, Barnes's trial counsel's single use of this phrase while repeating a question to a witness, although not an ideal word choice, does not constitute deficient performance.

(b) Barnes next complains that his trial counsel was ineffective for not requesting a jury instruction on mutual combat. However, under the facts of this case, trial counsel's failure to request this instruction was not deficient.

The defense of mutual combat requires a finding of a mutual intent or agreement to fight between a defendant and a victim. See *Johnson v. State*, 300 Ga. 665, 669 (4) (c) (797 SE2d 903) (2017); *Mathis v. State*, 196 Ga. 288, 291 (1) (26 SE2d 606) (1943) (mutual willingness, readiness, and intent of both parties to fight is essential to establish mutual combat). "Evidence of an ordinary scuffle or fight typically does not warrant a charge on mutual combat. This Court has also held that when the defendant asserts he acted in self-defense during a

6

fight and had no intent to kill, then an instruction on mutual combat is not warranted." (Citations omitted.) *Russell v. State*, 303 Ga. 478, 481 (2) (813 SE2d 380) (2018).

At the hearing on the motion for new trial, Barnes's trial counsel explained that he did not request the jury instruction because there was no evidence the victim and Barnes willingly fought one another. Rather, the evidence supported a defense theory of, at most, self-defense. Therefore, trial counsel asked that the jury be instructed on self-defense instead.

We agree with trial counsel that the evidence[2] did not support instructing the jury on mutual combat and therefore conclude that Barnes's counsel was not deficient in this regard. See *Pulley v. State*, 291 Ga. 330, 334 (3) (729 SE2d 338) (2012) (trial court did not err in deciding not to charge jury on mutual combat where appellant testified that he threw a television at the victim and killed him only after the victim first attacked him with scissors); *Pearson v. State*, 278 Ga. 490, 492 (3) (604 SE2d 180) (2004). See also *Jones v. State*, 287 Ga. 770, 771 (700 SE2d 350) (2010) ("[T]rial counsel cannot be faulted for

_____

[2] We do not agree with Barnes that the location of the fight, Beasley's "calling to" Barnes, or Barnes's supposed "lack of motive" constitute evidence of a mutual willingness to fight.

7

failing to request a jury charge that was not authorized by the evidence.").

(c) Finally, Barnes argues that following a potential juror's "prejudicial" comment, his trial counsel should have requested that the trial court excuse the jury panel or that the trial court give some sort of curative instruction. We disagree that trial counsel's decision not to request either of these options constituted ineffective assistance.

More specifically, Barnes complains that the potential juror, who was his former middle school teacher, said that she knew Barnes to be "a puncher" when he was in her class. Barnes argues that the statement was inherently prejudicial and that trial counsel should have taken corrective action. See, e.g., *Moore v. State*, 156 Ga. App. 92, 93 (1) (274 SE2d 107) (1980) (prospective juror's statement that defendant was a "firebug" where defendant was charged with arson was inherently prejudicial); *Lingerfelt v. State*, 147 Ga. App. 371, 372-373 (1) (249 SE2d 100) (1978) (prospective juror's statement during voir dire that he heard defendant, who was on trial for burglary and rape, was a "peeping tom" was inherently prejudicial).

(i) At the hearing on Barnes's motion for new trial, his trial counsel explained that after considering the issue, she elected to simply strike the

prospective juror. We do not find that counsel's strategic decision to strike the juror instead of requesting the replacement of the entire panel and in lieu of requesting a curative instruction to be so patently unreasonable that no competent attorney would have followed such a course. See *Lockhart v. State*, 298 Ga. 384, 385-387 (2) (782 SE2d 245) (2016) (counsel was not deficient for his strategic decision not to request replacement of the entire panel after a prospective juror told the jury pool that he had met the defendant while working at the prison "on the maximum security floor . . . dealing with violent criminals").

(ii) Moreover, Barnes has failed to show a reasonable probability that but for trial counsel's alleged errors, the result of the proceeding would have been different. At trial, Barnes did not contest that he beat Beasley or that Beasley died as a result of those injuries. Barnes also gave shifting explanations for the incident and his injuries to different people, all of which were presented to the jury and which seriously undermined his assertions of self-defense. In light of this evidence, the potential juror's statement about Barnes's middle school behavior was not so inherently prejudicial such as to deny Barnes a fair trial. This enumeration is without merit.

3. Lastly, Barnes argues that the trial court erred in not granting his

objection to the court's re-instruction on malice murder.  We disagree.

During deliberations, the jury submitted the following question to the trial court: "What is malice murder?"  In response, the trial court recharged the jury on malice murder, after which Barnes objected that less than the entire jury charge had been given.  Barnes now argues that the trial court should have done more than simply recharge the jury on malice murder, such as offering to repeat the instruction and asking the jury if its question had been sufficiently answered.

"A trial court has a duty to recharge the jury on issues for which the jury requests a recharge.  As a general matter, however, where no such request has been made, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court."  (Citation and punctuation omitted.)  *Sharpe v. State*, 288 Ga. 565, 569 (6) (707 SE2d 338) (2011).  Accord *Leeks v. State*, 296 Ga. 515, 521 (4) (769 SE2d 296) (2015).

Here, nothing indicates that the jury was confused after the recharge or that the recharge left the jury with an erroneous impression of the law, and it was within the court's discretion whether "to recharge the jury in full or only upon the point or points requested" by the jury.  *Taylor v. State*, 174 Ga. App. 900, 902 (6) (331 SE2d 920) (1985).  Indeed, "[w]e have never held . . . that the court

10

must engage in a question and answer session with the jury or instruct the jurors individually on how to apply the law to the facts." *Kimmel v. State*, 261 Ga. 332, 335 (3) (404 SE2d 436) (1991). The trial court did not abuse its discretion in limiting the recharge to the point requested by the jury. See *id.*

Judgment affirmed. All the Justices concur, except Peterson, J., who concurs in judgment only in Division 2 (c).