In the Supreme Court of Georgia

Decided: May 17, 2021

S21A0331. REDDING v. THE STATE.

BOGGS, Justice.

After a 2017 jury trial, Julian Keyon Redding was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of Prince Varner. He appeals, asserting three errors in the trial court's jury instructions and ineffective assistance of trial counsel. For the reasons stated below, we affirm.[1]

---

[1] The murder occurred on October 24, 2015. On January 14, 2016, a Henry County grand jury indicted Redding for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. Redding was tried before a jury from July 10 to 14, 2017, and found guilty of all charges. Redding was sentenced to serve life in prison without the possibility of parole for malice murder and five years to serve consecutively on the firearm charge. The trial court merged the aggravated assault count into the malice murder conviction, and the felony murder charge was vacated by operation of law. On July 17, 2017, Redding's trial counsel filed a timely motion for new trial, which was amended by appellate counsel on December 2, 2019 and February 20, 2020. After a hearing, the motion for new trial was denied

1. The evidence at trial[2] showed that on September 13, 2015, Redding's cousin, DeMarcus Jester, was shot in the leg. Redding was aware of rumors that Prince Varner was responsible. On October 25, 2015, Varner, his girlfriend, and two friends went to the Red Zone, a local bar in McDonough. All four were patted down by a bouncer for weapons. During the evening, Redding and some of his friends followed Varner around the bar and told him, "Somebody die tonight." They continued to harass him throughout the night, and Varner told his girlfriend, "I feel like they going to jump me." In the early morning hours, one of Redding's friends lured Varner outside the bar by offering him a cigar. Redding emerged from the bar and again told Varner, "Somebody die tonight. Somebody die tonight." Varner was standing at the bar entrance talking on his cell phone

---

on May 19, 2020. Redding's notice of appeal was filed on May 20, 2020, and the case was docketed in this Court for the term beginning in December 2020 and submitted for decision on the briefs.

[2] This Court no longer routinely considers sua sponte the sufficiency of the evidence in non-death penalty cases. See *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020). But a review of the evidence here is relevant to Redding's enumerations of error.

when Redding retrieved a pistol from his car and approached Varner, who said, "I'll beat your mother******g *ss. Put down the pistol."[3] Varner then ran back into the crowded bar. Redding followed him to the entrance doorway and shot him six times from behind, striking and wounding a bystander, and continuing to shoot even after Varner fell face-down on the floor. Redding then fled; Varner died at the scene.

The bar had an extensive video and audio surveillance system, including close-up views of the bar entrance, and the shooting was recorded and played for the jury. Video recordings and still frames from the videos showed Varner standing outside the bar's front entrance, Redding running toward him from the parking lot, Varner ducking and fleeing into the bar as Redding followed him through the entrance doors, and Redding shooting Varner in the back multiple times from only a few feet away, even after Varner fell to

---

[3] Varner's cousin, who was standing nearby, testified to Varner's statement. On direct examination, Redding denied that he heard this, claiming instead that Varner said Redding should not create any "smoke" or controversy or else Varner would "kill y'all." But on cross-examination, Redding testified only that Varner had threatened him at some unspecified earlier time.

the floor. Police officers recovered six shell casings near the bar entrance, but no firearm was found on or near Varner's body, and three witnesses testified that Varner never had a gun. At trial, Redding admitted that the shells were fired from his pistol.

Redding asserted a defense of justification by self-defense, claiming that Varner had a violent reputation, belonged to a gang, was known to carry a gun, was seen earlier in the evening taking a pistol from his girlfriend's purse, and was suspected of having shot Jester. Redding claimed that Varner had threatened him on Facebook and had sent threatening messages by cell phone, but he did not produce any social media or telephone messages. In addition, Redding testified that Varner had threatened him "earlier that night" and that he overheard Varner threatening his cousin, Javon Redding, and saying that he had a "MAC-10" submachine gun "on deck." Finally, Redding testified that when he approached Varner outside the bar, "[w]hen he turned back toward me, it appeared I seen a weapon, so I started shooting." But Redding also testified that he did not see what he said appeared to be a weapon until after he

4

approached Varner at the bar door with his pistol drawn, and did not feel threatened until Redding "first walked towards him." The detective in charge of the investigation testified that the video and still frames showed nothing in Varner's right hand and a cell phone in his left hand.[4]

2. In Redding's first enumeration of error, he contends that the trial court erred in failing to give his requested charge on the defense of mistake of fact under OCGA § 16-3-5, which provides: "A person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact

---

[4] While Redding asserts in his brief that the detective acknowledged at trial that a still frame from the video could depict Varner with an object in his right hand, this statement is not accurate. On cross-examination, Redding repeatedly attempted to elicit testimony from the detective that several still frames from the video showed that Varner *could* have had a gun in his right hand, but the detective denied it, saying that at most he could not see what was in Varner's right hand in several frames because that hand was not visible at that moment. On redirect, the prosecutor played the video of the shooting again, and the detective testified positively that there was nothing in Varner's right hand. Moreover, the video recordings and the still frames were displayed for the jury and form part of the record on appeal. See *Jones v. State*, 310 Ga. 886, 889 (2) (855 SE2d 573) (2021) (jury viewed video of shooting, and video did not suggest that appellant was in such danger as to reasonably believe it was necessary to shoot the victim); *Henderson v. State*, 310 Ga. 708, 709-710 (1) (854 SE2d 523) (2021) (same).

which, if true, would have justified the act or omission." He cites this Court's decision in *Pullin v. State*, 257 Ga. 815 (364 SE2d 848) (1988), in which we held that because the trial court fully charged the jury on justification and self-defense, Pullin was not entitled to a charge on mistake of fact pursuant to OCGA § 16-3-5. Id. at 817 (3).

Redding urges that *Pullin* be overruled because, he claims, it fails to provide any reasoning or discussion of the language of the relevant Code section in support of its holding.[5] But *Pullin* is not the origin of this holding, which has been relied upon by this Court and the Court of Appeals in opinions dating back nearly half a century, and we decline Redding's invitation to overrule *Pullin* or this line of cases.

---

[5] Redding complains that "*Pullin*'s division 3 offered no reasoning at all," but that division actually referred specifically to the discussion of the "full and fair" jury instructions on justification and self-defense in an earlier division of the opinion. Moreover, Division 3 of the opinion cited *Ellis v. State*, 174 Ga. App. 535 (330 SE2d 764) (1985), which cited numerous earlier decisions of this Court and the Court of Appeals holding the mistake-of-fact instruction substantially duplicative of a full and complete instruction on self-defense in this context. Id. at 536 (2).

Since 1965,[6] a series of decisions has held that a mistake-of-fact instruction is not required, even upon request, if the "mistake" or "misapprehension" alleged by the defendant is the belief that the victim possessed a weapon or was about to use deadly force against the defendant, so long as the trial court fully instructs the jury on justification and self-defense, including analogous principles of justification and reasonable belief. See, e.g., *Jordon v. State*, 232 Ga. 749, 754 (4) (208 SE2d 840) (1974) (not error to refuse charge on mistake of fact when "trial judge fully charged on justifiable homicide"); *McClendon v. State*, 231 Ga. 47, 48 (4) (199 SE2d 904) (1973) (requested charge on mistake of fact not required when "court

---

[6] The Code of 1933, § 70-207, provided: "A new trial may be granted in all cases when the presiding judge may deliver an erroneous charge to the jury against such applicant on a material point, or refuse to give a pertinent legal charge in the language requested, when the charge so requested shall be submitted in writing." In 1965, the General Assembly revised former Ga. Code Ann. § 70-207, now OCGA § 5-5-24, removing the previous requirement that a jury instruction requested in writing be given in the exact language requested. See Ga. L. 1965, p. 18, § 17; see also *Hardwick v. Price*, 114 Ga. App. 817, 821 (3) (152 SE2d 905) (1966). Therefore "[t]he failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principles, is no longer a ground for new trial." (Citations omitted.) *Young v. State*, 226 Ga. 553, 556 (5) (176 SE2d 52) (1970) (citing *Hardwick*).

fully covered the principles of justifiable homicide, and it was not error to fail to charge in the exact language requested." (Citation omitted.)). Also, in *Ellis v. State*, 174 Ga. App. 535 (330 SE2d 764) (1985),the Court of Appeals relied upon both its decisions and those of this Court to hold that the appellant was not entitled to a mistake-of-fact charge when the trial court's full charge on self-defense included an instruction that "a person is legally justified in using force against another when and to the extent that *he reasonably believes* that such force is necessary to defend himself against such other's [imminent] use of unlawful force." (Interpolation and emphasis in original.) Id. at 536 (2).

This Court has continued to follow this line of cases after its decision in *Pullin*. See, e.g., *Winters v. State*, 303 Ga. 127, 133 (III) (810 SE2d 496) (2018) (holding that "mistake of fact is not separate from a self-defense argument where the asserted mistake concerned whether the victim was armed and the defendant's use of force was thus justified." (Citation omitted.)); *Daniel v. State*, 285 Ga. 406, 411 (7) (677 SE2d 120) (2009) (mistake of fact not separate defense when

8

alleged mistake "concerned whether the victim was armed, and thus, whether [appellant] was justified in shooting first in self-defense." (Citations and punctuation omitted.)); *Bell v. State*, 280 Ga. 562, 567 (5) (b) (629 SE2d 213) (2006) (same); *Slaughter v. State*, 278 Ga. 896, 896 (608 SE2d 227) (2005) (same).

Here, considering the charge as a whole, see *Powell v. State*, 307 Ga. 96, 100 (2) (a) (834 SE2d 822) (2019), the trial court did not err in declining to give a mistake-of-fact instruction. The only mistake of fact asserted by Redding was that he mistakenly believed Varner had a gun, thus supporting his defense of justification by self-defense. The trial court's instructions included a lengthy series of pattern jury instructions on justification and self-defense, including language repeatedly instructing the jury on a defendant's "reasonable belief" with respect to the use of force in self-defense. A mistake-of-fact instruction therefore was unnecessary, given the trial court's full and complete instructions on self-defense and justification, and the trial court did not err in failing to give it on request.

3. Redding asserts that the trial court committed plain error when it failed to instruct the jury sua sponte that he had no duty to retreat after the State questioned him about his testimony that he left the bar and went to his car, asking why he did not leave if he was afraid of Varner.

> To establish plain error, [Redding] must identify an error that was not affirmatively waived, was clear and not open to reasonable dispute, likely affected the outcome of the proceeding, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

(Citation omitted.) *Thompson v. State*, 304 Ga. 146, 151 (6) (816 SE2d 646) (2018).[7]

The relevant instruction says:

> *One who is not the aggressor* is not required to retreat before being justified in using such force as is necessary for personal defense or in using force that is likely to cause death or great bodily harm if one reasonably believes such force is necessary to prevent death or great bodily injury to oneself or a third person or to prevent the commission of a forcible felony.

(Emphasis supplied.) Georgia Suggested Pattern Jury Instructions,

---

[7] Redding acknowledges in his brief that he failed to request the charge and raised no objection at trial, and that the plain error standard therefore applies.

10

Criminal Cases 3.10.13 (2020).

Redding claims that his testimony regarding Varner's earlier threat to his cousin and Varner's statement that he had a "MAC-10 on deck" was evidence that Varner was the "original aggressor." However, no evidence was presented that Varner had such a firearm in his actual possession at the time.

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's *imminent* use of unlawful force. Furthermore, the doctrine of reasonable fear does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing.

(Citations and punctuation omitted; emphasis in original.) *Carter v. State*, 285 Ga. 565, 566 (2) (678 SE2d 909) (2009); see also OCGA §§ 16-3-21, 16-3-23.1; *Rammage v. State*, 307 Ga. 763, 766-767 (2) (838 SE2d 249) (2020). Redding's testimony that Varner threatened him and his cousin earlier in the evening does not show imminent danger. See *Carter*, 285 Ga. at 566-567 (2) (threat against appellant's relative 30 minutes before shooting insufficient to show

11

appellant was in imminent danger from victim.)

Nor does it show that Varner was an "aggressor" within the meaning of OCGA § 16-3-21 (b). In *Hoffler v. State*, 292 Ga. 537 (739 SE2d 362) (2013), we rejected a similar allegation that the trial court committed plain error in failing to instruct the jury on retreat. Id. at 542 (4). At his trial, Hoffler testified that he and the victim had an earlier argument, during which the victim pulled out a knife. Hoffler backed away, and no physical fight occurred at that time, but Hoffler obtained a gun from a friend and later the same day confronted the victim and shot and killed him, although he claimed that the victim once again displayed a knife. Id. Noting that the legal theory of no duty to retreat requires that the person claiming self-defense not be the original aggressor, this Court observed:

> Even though Hoffler claimed he saw a knife with blade exposed, he was wielding a loaded handgun and he did not testify that [the victim] threatened him verbally or lunged at him or in any way attempted a physical attack upon him. Indeed, the eyewitness accounts and the forensic evidence do not support a claim that [the victim] was the original aggressor.

(Punctuation omitted.) Id. We concluded that there was "no legal

12

error, obvious or otherwise," and Hoffler could not "make it past the first prong of the plain error review." Id.

Similarly, Redding testified that he and his cousin were threatened by Varner earlier in the evening, but no confrontation took place at that time. Instead, Redding acknowledged that he went out to his car, retrieved a pistol, and approached Varner with his pistol in hand before "[i]t appeared I seen a weapon." While Redding testified that Varner verbally threatened him, he acknowledged that Varner turned away and ran into the bar, and that he pursued Varner into the bar and shot him repeatedly. And in Redding's case, in addition to eyewitness accounts, the evidence includes multiple video recordings of the incident, which also fail to support a claim that Varner was the aggressor at the time of the shooting. No evidence supports Redding's claim that Varner was the aggressor, and he therefore was not entitled to a jury instruction under OCGA § 16-3-23.1.

This Court further held in *Hoffler* that even assuming that some evidence existed that Hoffler was not the original aggressor,

reversal was not required because his "defense of self-defense was fairly presented to the jury, and the jury was fully instructed on the law of justification and self-defense." (Citation omitted.) 292 Ga. at 542-543 (4). As noted above, Redding's claim of self-defense was fairly presented to the jury, and the jury was also fully instructed in the law of justification and self-defense. Redding therefore "has not met his high burden of establishing plain error." *Knighton v. State*, 310 Ga. 586, 595 (2) (a) (853 SE2d 89) (2020).

4. Redding also asserts that the trial court committed plain error in instructing the jury to consider "intelligence" as a factor in its assessment of witness credibility. The trial court gave the following instruction:

> The jury must determine the credibility of the witnesses. In deciding this, you may consider all the facts and circumstances of the case, including the witnesses' manner of testifying, their intelligence, their means and opportunity of knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their testimony, their interest or lack of interest in the outcome of the case, and their personal credibility as you observed it.

"In the case of a review for plain error, it is not sufficient to find

14

actual legal error, as the jury instruction in question must have an obvious defect rather than a merely arguable defect." (Citations and punctuation omitted.) *Smith v. State*, 301 Ga. 79, 81 (3) (799 SE2d 762) (2017).

> [T]his Court has previously reviewed jury charges where intelligence is given as a factor that may be considered with respect to witness credibility and found no reversible error where, as here, the court's charge shows that the intelligence factor was not highlighted or singled out; as intelligence was just one of several factors which could be considered. Indeed, even assuming that the better practice is to omit intelligence as one of the factors in the credibility charge, its inclusion is not reversible error under the circumstances presented here. We find no reversible error, much less any "plain error," in the jury instruction given by the trial court.

(Citations and punctuation omitted.) Id. at 82 (3). Similarly, we see no plain error in the inclusion, without any particular emphasis or comment, of these two words in the trial court's jury instruction.

5. Redding asserts that his trial counsel provided constitutionally ineffective assistance in four respects. To prevail on his claim of ineffective assistance, Redding must prove both that the performance of his lawyer was professionally deficient and that he

15

was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, he must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." (Citation omitted.) *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). This requires a defendant to "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." (Citation and punctuation omitted.) *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015). And to prove prejudice, Redding "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). "If either *Strickland* prong is not met, this Court need not examine the other prong."

*Palmer v. State*, 303 Ga. 810, 816 (IV) (814 SE2d 718) (2018). We conclude that Redding's counsel did not render ineffective assistance for the reasons stated below.

(a) Redding asserts that his trial counsel was ineffective in "opening the door" to testimony regarding Redding's calls from jail by eliciting testimony from Redding that he regretted the shooting, that he was sorry that it happened, and that he only shot Varner because he feared for his life and that of his cousin. The State then, over Redding's counsel's objection – which was denied because the trial court concluded it was impeachment testimony – called the lead detective in rebuttal to testify that he listened to Redding's calls from the jail and that in several calls Redding was laughing and joking about the shooting.[8] Trial counsel again objected and moved for a mistrial after the detective testified that Redding "never appeared to be scared, nervous, or remorseful for the shooting, in my opinion." The motion for mistrial was denied, but the jury was instructed to disregard the detective's statement.

---

[8] Neither a recording nor a transcript of the calls was offered in evidence.

17

At the hearing on Redding's motion for new trial, trial counsel testified that he was aware of the jail calls but made a decision to elicit an expression of regret from Redding in an attempt to make Redding appear more sympathetic to the jurors, to emphasize that Redding feared for his life, and to counter evidence that Redding had threatened the victim and that the shooting was in revenge for the earlier shooting of Redding's cousin. Counsel testified that, given the lengthy time Redding had been in jail, he believed that any statements in a telephone conversation with a friend would have been only casual remarks "in a light moment" that would not contradict that Redding felt remorse and regret for what had happened. Counsel further testified that he still believed that all of the investigating officer's testimony was objectionable and that the trial court should not have admitted any of it.

The trial court concluded that counsel had a strategic basis for his questions to Redding, and that even though the strategy was not successful, it was not professionally deficient. We agree.

With the benefit of hindsight, it would appear that this

strategy may have backfired. But that is not to say that it was ineffective. Informed strategic decisions do not amount to inadequacy under *Strickland*. The fact that [Redding] and his . . . present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that [Redding] received representation amounting to ineffective assistance of counsel.

(Citations and punctuation omitted.) *Muller v. State*, 284 Ga. 70, 73-74 (3) (663 SE2d 206) (2008). In light of the evidence presented against Redding, trial counsel's strategic choices were limited, and we cannot say that the decision to elicit this testimony requires a finding of deficiency. Moreover, as the trial court also observed, the evidence of Redding's guilt was compelling, including multiple close-range video recordings of the shooting itself, and Redding therefore cannot show a reasonable probability that, but for the detective's testimony, the result at trial would have been different.

(b) Redding also asserts that his trial counsel was ineffective in failing to object to the prosecutor's comments on Redding's pre-arrest silence and failure to come forward with evidence to law enforcement. He relies upon the "bright-line rule" announced in

*Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991), but

that rule was abrogated by the adoption of Georgia's current

Evidence Code, which was in effect at the time of Redding's 2017

trial. See *State v. Orr*, 305 Ga. 729, 736 (2) (827 SE2d 892) (2019).

Acknowledging that *Mallory* no longer applies, Redding contends

that *Orr* permits appellants to "raise *Mallory*-style challenges to

evidence of a defendant's pre-arrest silence," and that trial counsel

should have done so. But *Orr* was decided in 2019, and at the time

of Redding's trial the viability of *Mallory* remained unsettled. See

*Williams v. State*, 302 Ga. 474, 482 (IV) (a) (807 SE2d 350) (2017)

("[T]rial counsel's performance cannot be deemed deficient for not

raising an unsettled question of law.").

> Before *Orr*, this Court held that, because the validity of
> *Mallory* was "subject to reasonable dispute," trial counsel
> was not ineffective for failing to lodge an objection under
> that decision as it was an unsettled question of law. Now
> that we have squarely held that *Mallory* was abrogated
> by Georgia's new Evidence Code, it is clear that a
> defendant cannot prevail on a claim of ineffectiveness on
> the basis that his trial counsel failed to rely on a case that
> was not applicable to his trial.

(Citations and punctuation omitted.) *Jackson v. State*, 306 Ga. 266,

273 (5) (a) (830 SE2d 99) (2019). Redding cites no controlling precedent that his trial counsel supposedly missed in not raising "*Mallory*-style" challenges, and Redding therefore has failed to show deficiency on the part of his trial counsel in this respect.

(c) Redding next asserts that his trial counsel was ineffective in failing to request a jury instruction on the lesser offense of voluntary manslaughter. Voluntary manslaughter applies to "circumstances which would otherwise be murder [when the defendant] acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a).

> We have made clear that decisions as to which jury charges will be requested and when they will be requested fall within the realm of trial tactics and strategy. They provide no grounds for a new trial unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.

(Citation and punctuation omitted.) *Finnissee v. State*, 309 Ga. 557, 560-561 (2) (847 SE2d 184) (2020).

At the hearing on the motion for new trial, Redding's trial

counsel was asked why he did not ask for instructions on voluntary manslaughter, and he responded that he did not do so because "the facts of the case didn't suggest that it was warranted. . . . It just seems to me that under those facts, those charges, I don't believe they would have been given had they been requested."

> [W]hile jury charges on self-defense and voluntary manslaughter are not mutually exclusive, the provocation necessary to support a charge of voluntary manslaughter is different from that which will support a claim of self-defense. The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted. A charge on voluntary manslaughter is not available to a defendant whose own statement unequivocally shows that he was not angered or impassioned when a killing occurred, and when the other evidence does not show otherwise.

(Citations and punctuation omitted.) *Tarpley v. State*, 298 Ga. 442, 444-445 (3) (a) (782 SE2d 642) (2016). In his testimony, Redding denied being angry at Varner; under cross examination by the State, he denied the prosecutor's suggestion that the video recording and still frames showed "anger and determination," stating, "It's a

normal look, ain't it?" and that "[m]y mouth just open."

The other evidence presented tended to show that the shooting was not done in self-defense but rather was motivated by antagonism between Redding and Varner and their associates, largely due to Redding's belief that Varner had shot Redding's cousin weeks before. See *Johnson v. State*, 297 Ga. 839, 842-843 (2) (778 SE2d 769) (2015) (voluntary manslaughter charge not warranted in malice murder prosecution, despite defendant's allegation that he and victim had an antagonistic relationship, including physical confrontations). See also *Finley v. State*, 286 Ga. 47, 49 (3) (a) (685 SE2d 258) (2009) ("[W]ords alone cannot constitute serious provocation." (Citation omitted.)). "As counsel articulated a valid strategic decision regarding this instruction, failure to request this charge is not ineffective assistance." (Citation and punctuation omitted.) *Walker v. State*, 308 Ga. 33, 42 (3) (e) (838 SE2d 792) (2020).

(d) Redding asserts that his trial counsel was ineffective in failing to request a jury instruction that Redding had no duty to

retreat. Trial counsel testified that, given that the video did not show any aggressive action on Varner's part and that Varner was unarmed and was shot in the back, "[i]t just seems to me that the facts likely weren't there to talk about retreating and these sorts of things under those circumstances." As noted in Division 3, supra, this instruction was not adjusted to the facts, and "[t]rial counsel cannot be faulted for failing to request a jury charge that was not authorized by the evidence." (Citation and punctuation omitted.) *Barnes v. State*, 305 Ga. 18, 21 (2) (b) (823 SE2d 302) (2019).

(e) Finally, Redding asserts that the cumulative effect of the trial court's errors and ineffectiveness of his trial counsel deprived him of a fair trial. See *State v. Lane*, 308 Ga. 10, 13-14 (1) (838 SE2d 808) (2020). But here, we have found no deficiency on the part of trial counsel and no error on the part of the trial court, and Redding therefore cannot show cumulative error. See *Cox v. State*, 306 Ga. 736, 743 (2) (e) (832 SE2d 354) (2019) ("[W]e evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." (Citations and punctuation omitted.)).

*Judgment affirmed. All the Justices concur.*