311 Ga. 800
FINAL COPY

S21A0025.  FLOOD v. THE STATE.

LAGRUA, Justice.

Appellant Annette Collins Flood was convicted of felony murder and possession of a knife during the commission of a felony in connection with the stabbing death of Bobby Burns, her longtime boyfriend.  Appellant contends that the evidence was insufficient to support her conviction for felony murder.  She also raises three separate enumerations of error regarding the jury instructions provided at her trial and contends that these instructional errors combined to prejudice her.  Finally, Appellant contends that the State improperly placed her character at issue during closing argument.  Appellant seeks a new trial, but for the reasons stated below, we affirm.[1]

---

[1] The crimes occurred on April 21, 2016.  On July 27, 2017, a Chatham County grand jury indicted Appellant for malice murder, felony murder,

1. (a) Construed in the light most favorable to the jury's verdicts, the evidence presented at trial showed that Appellant and Burns had been seeing each other on and off for about 18 years. At the time of the crimes, the two had been living together for a little over a year in a boarding house where the tenants rented individual bedrooms and had shared access to the bathroom and common areas. Burns and Appellant shared a bedroom on the second level of the boarding house that contained a mini-refrigerator and other kitchen items, including utensils and kitchen knives.

Appellant had a history of being controlling in the relationship and had physically struck Burns on more than one occasion. In the months before the crimes, Burns and Appellant had been getting

---

aggravated assault, and possession of a knife during the commission of a felony. At a trial in July 2018, the jury found Appellant guilty of all charges except malice murder. The trial court then sentenced Appellant to life imprisonment for felony murder and five consecutive years for the knife possession charge. The aggravated assault charge merged for sentencing purposes. Appellant filed a motion for new trial on August 16, 2018, which she amended on May 30, 2019, and August 13, 2019. Following a hearing on August 13, 2019, the trial court denied the amended motion for new trial on June 9, 2020. Appellant filed a timely notice of appeal on June 18, 2020, and the case was docketed to this Court's term beginning in December 2020 and submitted for a decision on the briefs.

into loud verbal arguments in their bedroom that were overheard by other tenants. On January 26, 2016, three months prior to Burns's stabbing, Burns allegedly prevented Appellant from leaving the bedroom by blocking the door. Appellant called the police, who concluded that the incident was a mere verbal altercation. In her statement to police after the January incident, Appellant stated that Burns had never put his hands on her. Other witnesses testified that the two often fought about Burns's drug and alcohol use and Appellant's infidelity. According to Appellant, animosity in the relationship had escalated to the point that Appellant wanted to leave Burns.

On the day of the stabbing, Appellant was with her infant grandchild, playing cards at the boarding house with another tenant, Terry Moore. Burns returned from work around 5:00 p.m., and he, Appellant, and Appellant's grandchild went to their bedroom. Burns left the bedroom shortly thereafter. At some point, Appellant went to bed.

Around 2:00 or 3:00 a.m., Burns returned to the house. He was

3

drunk. Burns asked if Appellant was upset with him. According to Appellant, before she had a chance to respond, Burns pushed her head back, pushed her a second time, and came toward her with a raised hand, at which point Appellant reached behind her, grabbed a boning knife off the table, and stabbed Burns. Appellant then left the bedroom with her grandchild but did not call 911 or request help.

According to Moore, she often overheard Appellant and Burns arguing, and on the night of the stabbing, Moore awoke to a loud argument between the couple, which eventually quieted down until 3:00 or 4:00 a.m. when Appellant came to speak with her. Appellant told Moore that she was leaving the house with her grandchild. Appellant made no mention of Burns or anything about their altercation. Moore went back to sleep, went to work the next day, and upon returning home, encountered Appellant's daughter (and the mother of Appellant's grandchild), Khadijah Flood (hereinafter "Khadijah"), near Appellant's bedroom, hysterical and crying.

Appellant returned the grandchild to Khadijah early in the morning after leaving the boarding house. Later in the day,

Khadijah called Appellant about retrieving a stroller and some diapers left at the boarding house. When Khadijah arrived at the boarding house around 4:00 p.m., a tenant let her in, and she proceeded to Appellant's bedroom. Khadijah knocked, but there was no answer. She opened the unlocked door and saw Burns's body on the bed. Khadijah ran outside and called her mother. Appellant sounded normal on the phone until Khadijah told her about Burns, at which point Appellant became hysterical.

Burns's autopsy revealed a three-inch stab wound in the upper left chest and shoulder area. The medical examiner testified that Burns would have bled profusely from this stab wound. The examiner also found alcohol and cocaine in Burns's system and determined that the chest wound was the cause of Burns's death.

Appellant testified at trial. Her testimony largely centered around her claim of self-defense.

(b) Appellant contends that the evidence was insufficient to support her conviction for felony murder and instead supports a verdict of not guilty based on a theory of self-defense and that the

5

evidence is wholly consistent with her testimony that she lacked intent to kill or commit violent injury to Burns but was merely acting in self-defense. Appellant asserts that she grabbed an object to defend herself from Burns's attack and then left the room not knowing that he was seriously injured. Appellant further asserts that the State did not produce evidence contradicting this claim. At most, Appellant argues, the evidence supported a finding of voluntary manslaughter.[2] See OCGA § 16-5-2 (a).

When evaluating the sufficiency of evidence as a matter of constitutional due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis omitted). Reconciling inconsistencies in testimony and determining witness credibility are left to the province of the jury. See *Williams*

---

[2] We note that the jury was instructed on voluntary manslaughter, but we do not address if the evidence required that instruction.

*v. State*, 302 Ga. 474, 478 (I) (807 SE2d 350) (2017).  Here, the record is replete with evidence that would authorize a jury to find Appellant guilty of felony murder.  Appellant and Burns were in a turbulent relationship for approximately 18 years, during which they argued about substance abuse and infidelity.  Burns was described as quiet, laid-back, and rarely violent toward Appellant, except for Appellant's account of one incident in January 2016.  Appellant was described as the aggressor in the relationship and as being controlling of Burns.  Furthermore, Appellant admitted to stabbing Burns with a boning knife, and when detectives interviewed Appellant two days after the incident, she had no marks or injuries consistent with defending herself in a fight.  She stated that she did not see much blood after stabbing Burns, but the medical examiner's testimony was that Burns would have been bleeding profusely from the type of stab wound that Appellant inflicted.  In addition, after the stabbing, Appellant neither called 911 nor sought any assistance; she only told another tenant that she was leaving the house, without mentioning she had stabbed Burns.

7

Finally, during Appellant's phone call with her daughter, she made no mention of the previous night's stabbing.

Moreover, questions as to the existence of a justification defense are for a jury to decide, and given the evidence discussed above, the jury was free to decide whether Appellant acted in self-defense, and whether the alleged self-defense was warranted. See *Dent v. State*, 303 Ga. 110, 113 (1) (810 SE2d 527) (2018) ("It is a jury question as to whether [a showing of self-defense] has been made, and therefore, whether a defendant's claim of self-defense should be accepted."). In light of the evidence presented at trial, we conclude that the jury was authorized to reject Appellant's self-defense claim and find her guilty of felony murder. See *Robinson v. State*, 283 Ga. 229, 230 (1) (657 SE2d 822) (2008) ("[T]he jury was free to reject the claim that [the appellant] stabbed the victim in self-defense" and find the appellant guilty of felony murder. (citation and punctuation omitted)). Accordingly, this contention lacks merit.

2. Appellant raises three separate arguments regarding the jury instructions provided at trial: first, that the sequence of the jury

charges was improper; second, that the trial court incorrectly instructed the jury when the jury sought clarification of the jury charges; and third, that the trial court failed to give pattern charges on the legal relationship between a felony and felony murder. Appellant also contends that the cumulative prejudice from these errors requires a new trial.

Appellant failed to make a timely objection to each alleged instructional error; therefore, our review of the jury charges is limited to a plain error analysis. See *Solomon v. State*, 293 Ga. 605, 606-607 (2) (748 SE2d 865) (2013) (citing OCGA § 17-8-58 (b)). To establish plain error,

> [f]irst, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial

9

proceedings.

*Leeks v. State*, 303 Ga. 104, 108 (3) (810 SE2d 536) (2018) (citation and punctuation omitted). We need not analyze the other elements of the plain error test if the appellant fails to establish any one of them. See *State v. Herrera-Bustamante*, 304 Ga. 259, 264 (2) (b) (818 SE2d 552) (2018).

(a) First, Appellant alleges that the trial court incorrectly instructed jurors regarding the order in which they should consider the murder and voluntary manslaughter offenses in violation of *Edge v. State*, 261 Ga. 865, 867 (2) (414 SE2d 463) (1992), which holds that, where the evidence would authorize a charge on voluntary manslaughter, a sequential charge is improper if it requires the jury to consider voluntary manslaughter only if it has considered and found the defendant not guilty of malice murder and felony murder. "[T]he jury should be admonished that if it finds provocation and passion with respect to the act which caused the killing, it could not find felony murder, but would be authorized to find voluntary manslaughter." Id. at 867 (2) n.3.

During the jury instructions, the trial court defined malice murder, felony murder, and aggravated assault. Thereafter, the trial court gave the following instruction:

> [A]fter considering all the evidence, before you would be authorized to return a verdict of guilty of malice or felony murder, you must first determine whether mitigating circumstances, if any, would cause the offense to be reduced to voluntary manslaughter.

The court then went on to instruct the jury on the definitions of voluntary manslaughter and provocation.

After about ten minutes of deliberations, the jury sent a note to the trial judge that read, "The jury requests a copy of a description of the charges." The jury returned to the courtroom, and the jurors clarified that one member requested "the definition of the law of the charges." In response, the trial court orally reinstructed the jury in open court on the definitions of malice murder, felony murder, aggravated assault, and the knife possession charge. The court then orally gave the mitigating-circumstances instruction quoted above, followed by the voluntary manslaughter instruction.

The trial court asked if the oral recharge was helpful, and the

11

foreperson requested that the court send a written copy of the definitions of the charged crimes for the jurors to view. The court asked if there were any objections to providing these written charges, and defense counsel requested that the court send the entire set of jury instructions with the jury. The jury then returned to deliberations with a paper copy of the complete jury instructions, including the definitions of the crimes with which Appellant was charged and the mitigating-circumstances instruction.

Appellant argues that the trial court's instructions created ambiguity about the order in which the jury should have considered the various homicide charges. Citing *Ortiz v. State*, 291 Ga. 3, 5 (2) (727 SE2d 103) (2012), Appellant argues that the trial court should have first instructed the jury as to the elements of malice murder, felony murder, aggravated assault, and voluntary manslaughter, and then instructed the jury to determine whether mitigating circumstances would reduce the crime to voluntary manslaughter. Appellant contends that the mitigating-circumstances instruction was given prior to the charge on the elements of voluntary

12

manslaughter, misleading the jury into thinking that it must first acquit the Appellant of either form of murder before it could consider voluntary manslaughter.

However, the trial court instructed the jury to consider mitigation first, and the jury verdict form listed the homicide charges in the proper order. With respect to the homicide counts, the prepared verdict form read as follows:

JURY VERDICT

**COUNTS ONE, TWO AND THREE: HOMICIDE**

**(Select one Verdict Only)**

\_\_\_ We the jury find the Defendant NOT GUILTY

or

\_\_\_ We the jury find the Defendant GUILTY of the lesser included offense of Voluntary Manslaughter

or

\_\_\_ We the jury find the Defendant GUILTY of Malice Murder

or

\_\_\_ We the jury find the Defendant GUILTY of Felony

13

Murder

At the end of the jury's deliberations, the foreperson checked only the fourth and final option, indicating that the jury found Appellant guilty of felony murder.

We conclude that the verdict form — together with the jury charge and recharge — allowed for the jury's proper consideration of the murder charges. "A preprinted verdict form is treated as part of the jury instructions which are read and considered as a whole in determining whether there is [instructional] error." *Rowland v. State*, 306 Ga. 59, 68 (6) (829 SE2d 81) (2019) (citations and punctuation omitted). There is no exact formula that trial courts must follow, "so long as the charge as a whole ensures that the jury will consider whether evidence of provocation and passion might authorize a verdict of voluntary manslaughter." *Elvie v. State*, 289 Ga. 779, 781 (2) (716 SE2d 170) (2011) (citation and punctuation omitted). Taken together, the jury instructions did not violate our holding in *Edge* because the jury was properly admonished to consider mitigating evidence in both oral and written instructions.

14

These instructions were not erroneous. Because there is no error, much less plain error, this claim fails.

(b) Next, Appellant argues that the trial court gave an inadequate explanation when the jury asked about the different forms of homicide. We see no error. During deliberations, the jury sent a note to the trial court stating: "We have one juror who believes the defendant is guilty of malice murder. The other eleven jurors are willing to settle on a lesser charge of felony murder <u>or</u> involuntary [sic] manslaughter." (Emphasis in original.) The trial court addressed this concern through the following colloquy in open court:

> COURT: I want to emphasize to you, as you know, once again, whatever your decision is, it has to be unanimous. If there is to be a decision, all twelve of you must freely and voluntarily agree to it. But felony murder and malice murder are both murder. Felony murder is not a lesser offense than malice murder. As you'll recall, they were written on the board and they were written at the same level.[3] They are murder. The lesser included offense is voluntary manslaughter as that has been defined to you. Does that help any?

---

[3] The court seems to be referring to statements made during closing argument, where an attorney used a board to demonstrate the relationship between the crimes.

15

FOREPERSON: Yes, sir.

Appellant did not object to the trial court's statement. Appellant now argues that this instruction was unclear and incorrect because the court failed to explain which offenses the jury should consider and how they should be considered, and failed to distinguish between the required intent for malice and felony murder. We disagree.

"A trial court has a duty to recharge the jury on issues for which the jury requests a recharge." *Barnes v. State*, 305 Ga. 18, 23 (3) (823 SE2d 302) (2019) (quoting *Sharpe v. State*, 288 Ga. 565, 569 (6) (707 SE2d 338) (2011)). Here, the jury's note indicated confusion about the relationship between malice murder, felony murder, and manslaughter. This confusion was evident by the fact that the jury's note indicated that it was considering involuntary manslaughter, which was not one of the indicted charges, and that the jury called felony murder a "lesser charge" than malice murder. In response, the trial court clarified that felony murder and malice murder were both forms of murder, and that felony murder is not a lesser offense

16

than malice murder. The court further stated that voluntary manslaughter is a lesser included offense. This was a correct statement of law. Furthermore, the foreperson indicated that the trial court's recharge assisted the jury in its understanding. Defense counsel raised no objection to this course of action. Given the demonstrated confusion by the jury, the trial court's response was not an abuse of discretion. See *Dozier v. State*, 306 Ga. 29, 32 (3) (829 SE2d 131) (2019) (no abuse of discretion where the trial court discerned that the jury was confused about a legal theory, the trial court correctly recharged the jury, and there was nothing indicating that the jury had an erroneous impression of the law after the recharge).

"As a general matter . . . , where [a request for a recharge has not] been made, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court." *Barnes*, 305 Ga. at 23 (3) (citation and punctuation omitted). The trial court correctly noted that the jury was giving the court "information on how [it stood] with regard to certain charges," and

17

the court offered guidance that was a correct statement of the law in response. Therefore, we conclude that the trial court did not abuse its discretion in instructing the jury. We therefore discern no plain error, and this enumeration fails.

(c) Next, Appellant argues that the trial court failed to give a jury instruction requested by both the State and Appellant. We identify no plain error.

Both parties made written requests to the court to include Georgia Suggested Pattern Jury Instructions: Criminal Cases, Vol. II: § 2.10.30, which is the pattern jury instruction outlining the relationship between a felony murder and the underlying felony.[4]

---

[4] The pertinent portion of this instruction states:

The homicide must have been done in carrying out the [felony] and not collateral to it. It is not enough that the homicide occurred soon or presently after the felony was attempted or committed. (There must be such a legal relationship between the homicide and the felony so as to cause you to find that the homicide occurred before the felony was at an end or before any attempt to avoid conviction or arrest for the felony.) The felony must have a legal relationship to the homicide, be at least concurrent with it in part, and be a part of it in an actual and material sense. A homicide is committed in the carrying out of a felony when it is committed by the accused while engaged in the performance of any act required

18

During its initial oral charge to the jury, the trial court gave only the definition of felony murder as laid out in Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 2.10.20, Felony Murder; Defined.[5] It did not give Pattern Jury Instruction § 2.10.30 orally in either the initial oral charge or the oral recharge, but later, upon request by the jury, sent a written copy of this instruction with the jury into deliberations, along with all of the other jury instructions in the case.

Appellant contends that both § 2.10.20 and § 2.10.30 must be provided to illustrate the relationship between the death and the underlying felony. See *Ware v. State*, 305 Ga. 457, 458-459 (2) (826 SE2d 56) (2019). Further, Appellant argues that the omitted jury instruction harmed her because "the jury cannot be presumed to have utilized the written charge to correct the erroneous oral charge

---

for the full execution of the felony.

[5] This instruction states: "A person (also) commits the crime of murder when, in the commission of a felony, that person causes the death of another human being (with or without malice). Under the laws of Georgia (*name offense*) is a felony and is defined as follows: . . ."

19

given directly by the judge, with the written charge given as a supplement." Instead, Appellant argues, "the jury should have been given the full definition of felony murder to ensure there was no confusion on the issue of its applicability to the facts in the case at bar."

Pretermitting any error in the omission of the underlying felony instruction in the oral charges, we conclude that the omission of the jury instruction was harmless. Here, the instruction that was omitted from the oral charge — but provided to the jury in written form — was about the relationship between Burns's death and the predicate felony. Given that the predicate felony was aggravated assault by stabbing, and the stabbing indisputably caused Burns's death, it is difficult to see how including the underlying felony instruction during the oral charges would have likely caused a different outcome in Appellant's trial. Therefore, Appellant has failed to meet her burden of proving plain error, and this enumeration fails.

(d) Appellant argues that these three alleged errors

cumulatively prejudiced her and that she is entitled to a new trial. "To establish cumulative error[, Appellant] must show that (1) at least two errors were committed in the course of the trial; [and] (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied [Appellant] a fundamentally fair trial." *State v. Lane*, 308 Ga. 10, 21 (4) (838 SE2d 808) (2020) (citation and punctuation omitted). However, when reviewing a claim of cumulative prejudice, "we evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." *Scott v. State*, 309 Ga. 764, 771 (3) (d) (848 SE2d 448) (2020) (citation and punctuation omitted). Even assuming — without deciding — that *Lane* applies to instructional errors, Appellant has failed to show more than one error with respect to the jury charges that would provide this Court with a basis for evaluating cumulative effect. This argument fails.

3. Finally, Appellant asserts that the trial court improperly admitted character evidence when the prosecutor stated during closing arguments that Appellant used drugs, thereby putting

21

Appellant's character at issue. For the reasons explained below, we conclude that the trial court committed no error, and even if the trial court had committed error by allowing the State to raise the inference that Appellant was a drug user, any such error was harmless.

During closing argument, the following discussion occurred in front of the jury:

> PROSECUTOR: The Defense, during the course of the evidence yesterday and during closing today, has tried to create a narrative for you that's just not true. What they want you to believe is that this woman is a woman who has been battered and beaten for years and that she finally just had to defend herself or snapped that that's what was going on here. That Bobby Burns was a horrible mean man who was abusive to her. And the evidence just — it doesn't support that. It just doesn't. The truth is both of these people drank. Both of them used drugs.
> DEFENSE: Judge, there's no evidence of that.
> COURT: Sustained. Jury, disregard.
> PROSECUTOR: Your Honor, may I respond?
> COURT: You can respond.
> PROSECUTOR: The — the defendant, in her own statement to the police officer said that she drank, too. And there has been evidence from her and her daughter about her own drug use.
> COURT: You are correct, in a past tense.
> PROSECUTOR: Actually, her daughter, in her interview with the detective, said she was concerned about her

mother's own current drug use.

DEFENSE: Judge, that did not come out before the jury.

PROSECUTOR: And I impeached her with that.

COURT: I agree.  Move on.

PROSECUTOR: May I talk about the drinking that she admitted that in her interview?

COURT: To the extent that she admitted it, yes.

PROSECUTOR: Thank you.  You heard her, in her interview, talk about the fact that she drank, too.  So this is not Bobby as some horrible drinking, drug-using, abusive person.  Substance abuse was something that went on with both of them.

OCGA § 17-8-75 provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same.  On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

Prosecutors generally have wide latitude in remarks made during closing statements, and the trial court determines these boundaries. See *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012).  And within these boundaries, a prosecutor may argue reasonable inferences from the evidence, including any that address the credibility of witnesses.  See id.  During Khadijah's testimony earlier

23

in the trial, the prosecutor asked, "Did you know your mother used drugs?" Khadijah responded, "When I was a child, yes." Thus, Appellant's past drug use had already been brought up as evidence.

Furthermore, as soon as the prosecutor said in her closing argument that Appellant used drugs, defense counsel objected. The trial court immediately intervened and instructed the jury to disregard the prosecutor's statement, and the defendant raised no further objection to any implication that Appellant used drugs. Moreover, any error in instructing the jury to disregard the comment was harmless, given that evidence of Appellant's past drug use was elicited without objection at trial and considering the substantial evidence of Appellant's guilt. Accordingly, this enumeration of error fails.

*Judgment affirmed. All the Justices concur.*

Decided June 21, 2021.

Murder. Chatham Superior Court. Before Judge John R. Turner, Senior Judge.

*David T. Lock*, for appellant.

*Meg E. Heap, District Attorney, Jennifer L. Parker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.